UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ASCENTIAL SOFTWARE CORPORATION,

        Plaintiff,

v.

RUSSELL DODSON,

        Defendant.

Civil Action No. 04-CV-40130 (DPW)

REDACTED VERSION

# DEFENDANT RUSSELL DODSON'S OPPOSITION TO ASCENTIAL SOFTWARE CORPORATION'S AMENDED MOTION FOR PRELIMINARY INJUNCTION

Defendant Russell Dodson ("Mr. Dodson") hereby opposes Ascential Software Corporation's ("Ascential") Amended Motion For Preliminary Injunction (the "Motion"). Mr. Dodson attaches as Exhibit A hereto the Declaration of Russell Dodson In Support of His Opposition to Ascential Software Corporation's Amended Motion for Preliminary Injunction ("Dodson Decl.").

### Request for Oral Argument

Mr. Dodson respectfully requests a hearing concerning the Motion.

### Preliminary Statement

After eliminating Mr. Dodson's position at Ascential, thereby terminating his employment, Ascential now seeks to enforce an onerous non-competition agreement that will once again terminate Mr. Dodson's employment – this time with a third party. Ascential's extreme request, which effectively seeks ultimate relief at this preliminary stage of the proceedings, is not warranted and should be rejected because: (1) Ascential has failed to establish a likelihood of success on the merits; (2) Ascential has offered no evidence of irreparable injury; and (3) both the public interest and the balance of hardships weigh against its application. Accordingly, Ascential's Motion should be denied.

Ascential has not demonstrated a likelihood of success on the merits because the Employee Noncompetition, Nondisclosure and Development Agreement (the "Contract") that Ascential contends bars Mr. Dodson from engaging in competition with it is, in fact, unenforceable. It is unenforceable, first, because it was [redacted]. Second, it is unenforceable because it is not "ancillary to an otherwise enforceable agreement" as is required by Texas law – which governs this dispute under Massachusetts choice-of-law rules. Furthermore, even if Massachusetts law were to apply, the Contract would be unenforceable because Ascential has not demonstrated a legitimate business interest that the overly broad Contract protects. Finally, insofar as Ascential seeks an injunction prohibiting Mr. Dodson from disclosing its confidential information, it cannot succeed because

1

neither Texas nor Massachusetts enforces a non-disclosure provision in the absence of any evidence that there is a viable threat of breach.

Even if Ascential could show a likelihood of success, injunctive relief is not appropriate because Ascential has provided no proof of irreparable injury. Instead, it relies on speculation and allegations based on information and belief. Indeed, Ascential's contentions that it is threatened with imminent harm are belied by Ascential's lengthy delay in applying for an injunction. Ascential is not entitled to force Mr. Dodson into unemployment based on its groundless allegations of wrongdoing.

Finally, the balance of hardships and the public interest weigh against granting Ascential injunctive relief. First, Ascential has yet to offer anything resembling proof that it is suffering or will suffer harm, but Mr. Dodson is threatened with immediate unemployment and damage to his reputation. Second, the public has no interest in furthering Ascential's sharp corporate practice of forcing an employee to sign an onerous agreement, which is unenforceable in the state of signing, and then reaching out from Massachusetts to disemploy a Texas resident who has worked only in its Texas offices, on the basis of an agreement that is no longer operative.

**Statement of Facts**

Russell Dodson has been a resident of Texas since 1992 when he relocated from Delaware to Houston. See Dodson Decl., ¶ 2. In 1994, Mr. Dodson accepted a position as a sales consultant in the Houston office of Informix Corporation ("Informix") where he remained until he relocated to Informix's Dallas office in 1998. See id. Through a series of corporate acquisitions not relevant to the instant dispute, Informix was divided into two separate entities during 2000, one of which became Ascential, and Mr. Dodson assumed the position of Regional Sales Engineering Manager in Ascential's Dallas office during October 2000. See id., ¶ 3. Mr. Dodson continued in this position until September 30, 2003, when he was terminated as part of a corporate downsizing. See id.

When Mr. Dodson joined Informix in 1994, he signed an employment agreement, which prohibited him from divulging Informix's confidential information but which did not contain any non-competition/non-solicitation provisions. See Dodson Decl., ¶ 5. After nearly ten years of employment with Informix and Ascential, however, in January 2003, Ascential's human resources department sent Mr. Dodson the Contract and directed him to execute it. See id., ¶¶ 6, 7 & Ex. B (Contract). From Ascential's Dallas office, Mr. Dodson phoned the human resources department to discuss the Contract. See id. at ¶ 7. Indeed, although no one verbally threatened him with loss of his employment, when Mr. Dodson asked whether he had to sign the Contract, he was given the impression that if he did not his job might be in jeopardy. See id. There was never any discussion concerning Mr. Dodson's ability to modify or amend the terms of the contract. See id. Subsequently, Mr. Dodson signed the document in the Dallas office and returned the executed original. See id.

The Contract attempts to prevent Mr. Dodson from competing with Ascential by: (1) prohibiting him from entering into any form of competition with Ascential for a period of one year; and (2) prohibiting him from soliciting customers, known potential customers, or employees of Ascential's for a period of two years. See id., Ex. B, §§ 4-5. Additionally, the Contract contains a provision directing Mr. Dodson permanently to maintain the confidentiality of Ascential's "proprietary or confidential information or know-how." See id., Ex. B, § 1. As consideration for the promises that Mr. Dodson was required to make under the Contract, it specifies that he was to be given "a grant of stock options," "continued employment at will" by Ascential, and "other good and valuable consideration," which was not described. See id., Ex. B, § 1. In fact, Ascential never granted Mr. Dodson additional stock options. See Dodson Decl. ¶ 8. Then, only a handful of months later, Ascential terminated Mr. Dodson's employment. [redacted]

Mr. Dodson has not disclosed or used Ascential's confidential information while at Informatica Corporation ("Informatica"), and he has no intention of doing so in the future. See

3

Dodson Decl., ¶ 9. While he was employed at Informix and Ascential, Dodson was not involved in any Ascential sales activities related to Temple-Inland or World Savings Bank (the two alleged Ascential prospects identified in Ascential's Motion), nor does he recall ever receiving any information concerning those entities. Id., ¶ 4. After joining Informatica, Mr. Dodson learned that Temple-Inland was *an existing Informatica customer* and that Informatica had solicited World Savings Bank to sell its products *before* Mr. Dodson joined Informatica. See id. In Mr. Dodson's current employment with Informatica, he has not participated in the solicitation of business from any entity with which he had contact while he was employed with Informix or Ascential. See id., ¶ 9.

## Argument

### I. ASCENTIAL HAS NOT SHOWN IT IS ENTITLED TO INJUNCTIVE RELIEF

Ascential seeks a temporary restraining order ("TRO") and a preliminary injunction that would: (1) force Mr. Dodson to terminate his employment with Informatica immediately; (2) prohibit Mr. Dodson from being employed by or connected to any client of Ascential's or any entity "whose products or services are similar in function or capability or [sic] otherwise competitive to the products or services being developed, manufactured or sold by [Ascential] or any of its subsidiaries," Dodson Decl., Ex. B, § 4, until after September 30, 2004; (3) enjoin Mr. Dodson from "directly or indirectly soliciting any existing customers or potential customers of Ascential" through September 30, 2005; and (4) order Mr. Dodson permanently not to reveal any of Ascential's confidential information. See Ascential's Proposed Order. Thus, Ascential seeks not only mandatory injunctive relief -- requiring Mr. Dodson to terminate his employment -- but seeks, now, all of the injunctive relief to which it could be entitled after a full trial on the merits, before Mr. Dodson has conducted any discovery or even filed his Answer. Under governing standards, Ascential is not entitled to such disruptive ultimate relief at this preliminary juncture.

4

A party seeking a TRO or a preliminary injunction must prove that: "(1) it is substantially likely to succeed on the merits of its claim; (2) absent the injunction there is 'a significant risk of irreparable harm'; (3) the balance of hardships weighs in its favor; and (4) the injunction will not harm the public interest." I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 33 (1st Cir. 1998) (citations omitted); see Hoover v. Morales, 164 F.3d 221, 224 (5th Cir. 1998) (same); Quincy Cablesystems, Inc. v. Sully's Bar, Inc., 640 F. Supp. 1159, 1160 (D. Mass. 1986) (standard used for a temporary restraining order is the same standard used for preliminary injunction). The purpose of preliminary relief is not to decide the merits of the dispute but to preserve the status quo pending a full trial on the merits; consequently, because "[m]andatory preliminary injunctions do not preserve the status quo," they "normally should be granted only in those circumstances when the exigencies of the situation demand such relief." Mass. Coalition of Citizens With Disabilities v. Civil Defense Agency And Office of Emergency Preparedness, 649 F.2d 71, 76 n.7 (1st Cir. 1981); Martinez v. Mathews, 544 F.2d 1233, 1243 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored . . . ."). Furthermore, it is well-established that preliminary injunctive orders, which are based on an incomplete record, "'should not grant relief properly awarded only in a final judgment . . . .'" Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana, 762 F.2d 464, 476 (5th Cir. 1985) (citations omitted); see Rivera-Vega v. ConAgra, Inc., 70 F.3d 153, 164 (1st Cir. 1995) ("When . . . the interim relief sought by the [movant] 'is essentially the final relief sought, the likelihood of success should be *strong*.'") (emphasis in original) (citations omitted). Finally, a party seeking a TRO must also prove that the TRO is essential to prevent irreparable injury until a full hearing on an application for a preliminary injunction can be held. See, e.g., 11A Wright, Miller & Kane, Federal Prac. & Proc. Civil 2d § 2951 (2004).

5

Ascential has waited for more than five months to bring this motion, proving on that basis alone that there is no threat of irreparable harm and no need for a TRO pending the preliminary injunction hearing. Furthermore, as set forth below, Ascential has failed to meet the requirements for obtaining preliminary injunctive relief.

## II.  ASCENTIAL IS UNLIKELY TO SUCCEED ON THE MERITS OF ITS CLAIMS

Ascential is unlikely to succeed on its claims that Mr. Dodson has violated the Contract for two reasons. First, the Contract is no longer operative. [redacted]. Second, even if the Contract were still operative, it is unenforceable against Mr. Dodson under the law of Texas, which govern this dispute, and under the law of Massachusetts.

**A.**  [redacted]

**B.  Even if The Contract Were Operative, The Non-Competition/Non-Solicitation Covenants It Contains Are Unenforceable Under Texas Law**

Even assuming, arguendo, that the Contract were still operative, the restrictive covenants contained therein would not be enforceable against Mr. Dodson. Massachusetts choice-of-law rules provide that the law of Texas applies to the Contract and this dispute. Under Texas law, the non-competition/non-solicitation covenants are unenforceable because they are not "ancillary to an otherwise enforceable agreement."

### 1.  Texas law governs the contract

When a federal court has jurisdiction based on the diversity of the parties, it must apply the choice-of-law provisions of the forum state -- in this case, Massachusetts. See Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 496 (1941). Massachusetts courts will generally give effect to a contractual provision that selects the law of a particular state to govern an agreement, see, e.g., Morris v. Watsco, Inc., 433 N.E.2d 886, 888 (Mass. 1982), but will not enforce such a provision if it: "'[1] would be contrary to a fundamental policy of a state; which has [2] a materially greater interest than the chosen state in the determination of the particular issue; and which . . . [3] would be the state of

6

the applicable law in the absence of an effective choice of law by the parties.'" Roll Systems, Inc. v. Shupe, No. CIV. A. 97-12689-GAO, 1998 WL 1785455, at *2 (D. Mass. Jan. 22, 1998) (alterations in original) (citations omitted); Oxford Global Resources, Inc. v. Guerriero, No. Civ.A. 03-12078-DPW, 2003 WL 23112398, at *4 (D. Mass. Dec. 30, 2003) (same). Under this three-factored test, Massachusetts courts would not give effect to the provision in the Contract selecting Massachusetts law and would apply the law of Texas to this case.

Texas has a strong and fundamental policy against enforcement of non-competition/non-solicitation covenants except in limited circumstances. See, e.g., Light v. Centel Cellular Co., 883 S.W.2d 642, 643-44 (Tex. 1994) (describing passage of Covenants Not To Compete Act). By amendments passed in 1989, 1993, and 1999, the Legislature of Texas added sections 15.50 - 15.52 to the Texas Business and Commerce Code to encode the state's policy to limit the enforcement of non-competition/non-solicitation agreements. See id.; TEX. BUS. & COMM. CODE ANN. §§ 15.50-15.52. Section 15.50 states in relevant part that:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COMM. CODE ANN. § 15.50(a). Section 15.52 provides that the "criteria for enforceability of a covenant not to compete provided by Section 15.50" and the "procedures and remedies . . . provided by Section 15.51" are "exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise." TEX. BUS. & COMM. CODE ANN. § 15.52. As discussed in Part II.B.2, *infra*, numerous court decisions have applied these statutory sections to prohibit enforcement of non-competition/non-solicitation covenants included in employment

7

contracts. Therefore, Texas has a demonstrated policy against enforcement of non-competition/non-solicitation agreements absent compliance with strict statutory requirements.

In contrast, Massachusetts has no such sweeping, fundamental policy limiting restrictive covenants. See, e.g., All Stainless, Inc. v. Colby, 308 N.E.2d 481, 485 (Mass. 1974). Indeed, to the extent the Massachusetts General Laws deal with restrictive employment covenants at all, they do so in the context of physicians, nurses, and individuals "in the broadcasting industry." See MASS. GEN. LAWS ch. 112, §§ 12X, 74D; MASS. GEN. LAWS ch. 149, § 186. The courts of Massachusetts also have not established any fundamental policy concerning restrictive employment contracts. See, e.g., New England Canteen Service, Inc. v. Ashley, 363 N.E.2d 526, 528 (Mass. 1977) (collecting cases); All Stainless, Inc., 308 N.E.2d at 485.

Finally, the laws of Texas would clearly govern the Contract in the absence of a choice-of-law provision. In a case concerning a contract without a choice-of-law provision, Massachusetts courts apply the laws of the state that has the "most significant relationship to the issue." Bushkin Assoc., Inc. v. Raytheon Co., 473 N.E.2d 662, 669-70 (Mass. 1985). To make that determination, Massachusetts considers twelve factors, with an emphasis on the final seven:

> "1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality and place of incorporation of the parties; 6) the needs of the interstate and international system; 7) the relevant policies of the forum; 8) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue; 9) the protection of justified expectations; 10) the basic policies underlying the particular field of law; 11) certainty, predictability and uniformity of result; and 12) ease in the determination and application of the law to be applied."

Dunfey v. Roger Williams Univ., 824 F. Supp. 18, 20 (D. Mass. 1993) (citations omitted); see Bushkin, 473 N.E.2d at 669-670. These factors unambiguously indicate that the laws of Texas would govern the Contract if there were no choice-of-law provision.

8

First, Mr. Dodson signed the Contract in Dallas, Texas. See Dodson Decl., ¶ 7. Second, to the extent Mr. Dodson had any discussions concerning the Contract, he conducted those discussions from Ascential's Dallas office. See id. Third, Mr. Dodson rendered and fulfilled all promises under the Contract in Texas and Ascential, insofar as it performed any of its obligations under the Contract, did so in Texas. Fourth, Mr. Dodson was employed by Ascential's predecessor, Informix, Inc., in Texas and, when Ascential was formed, Mr. Dodson continued to work in Ascential's Dallas office. See id., ¶¶ 2-3. Fifth, Mr. Dodson has been a resident of Texas since approximately 1992, and Ascential conducts substantial business in Texas. See id., ¶ 2. Sixth, the needs of the interstate system of commerce would not be adversely affected by applying the law of Texas to an employment contract between a Texas resident and the Dallas office of a corporation that conducts substantial business in Texas. Seventh and eighth, as discussed above, Massachusetts has no fundamental policy regarding the enforcement of restrictive employment covenants, but Texas has a demonstrated interest in prohibiting enforcement of such covenants unless they meet strict requirements. Ninth, Mr. Dodson, who worked for Ascential in Texas throughout his tenure with the company, had an expectation that he would be governed by the laws of that state, and Ascential, a sophisticated corporate actor that has long conducted business in Texas, should be well-aware of the strong policy of Texas prohibiting restrictive employment covenants. Accordingly, the expectations of the parties would not be disturbed by applying Texas law to this dispute. Tenth, the basic policies underlying the enforceability of restrictive employment covenants varies between Texas and Massachusetts, but as discussed above, Texas has the more weighty interest in this issue, especially considering that Ascential seeks to enforce such a covenant in Texas against a Texas resident. Eleventh, the application of Texas laws to the Contract would promote the uniformity of results by preventing Ascential, a company that does business in Texas, from depriving Mr. Dodson, a Texas resident who has been working in Texas for over twelve years, of the protections that Texas provides. Twelfth, the

9

laws of Texas regarding the enforceability of restrictive employment covenants are based on clear statutes that the courts have extensively construed; consequently, Texas law may be easier to apply than the equitable doctrines developed by the courts of Massachusetts through the common law.

All three factors of the test that Massachusetts uses to determine whether to enforce a contractual choice-of-law provision militate against enforcement in this case. Accordingly, this Court should apply Texas law to the Contract and the instant dispute.

2.  **The non-competition covenants are unenforceable under Texas law**

As described above, the Contract attempts to prevent Mr. Dodson from competing with Ascential by: (1) prohibiting him from entering into any form of competition with Ascential for a period of one year; and (2) prohibiting him from soliciting customers, known potential customers, or employees of Ascential for a period of two years.[1] See Dodson Decl., Ex. B, §§ 4-5. Because these covenants do not comply with the standards established by the Covenants Not To Compete Act of Texas, they are unenforceable against Mr. Dodson.

The Supreme Court of Texas has held that for a covenant not to compete to be enforceable, it must, in addition to other requirements, "be ancillary to or part of an otherwise enforceable agreement at the time the agreement is made. . . ." Light, 883 S.W.2d at 644 (citing TEX. BUS. & COMM. CODE § 15.50). When "[s]tanding alone, an at-will employment relationship does not constitute an otherwise enforceable agreement because it is 'illusory,' meaning not binding on either the employee or the employer." Johnson, 124 S.W.3d at 684 (citations omitted); see Light, 883 S.W.2d at 644-45; Tom James of Dallas, Inc. v. Cobb, 109 S.W.3d 877, 885-86 (Tex. App. 2003) (same). A covenant not to compete contained in an at-will employment agreement "may be enforceable, though, if the contract contains independent consideration that is not dependent on the illusory promise of continued employment." Johnson, 124 S.W.2d at 684. Pursuant to section 15.50(a) of the Texas

---

[1] Texas treats a covenant that prohibits solicitation as a covenant not to compete that is subject to the relevant

10

Business And Commercial Code, the "relevant inquiry is whether [a] promise was binding at the time that the agreement was made." Johnson, 124 S.W.3d at 685; Anderson Chemical Co. v. Green, 66 S.W.3d 434, 438 (Tex. App. 2001) (same). Consequently, it is well-established that:

> "A promise not to disclose an employee's proprietary information which is later accepted by the employer's performance in providing that information to the employee is a unilateral contract that cannot support a covenant not to compete because it is not otherwise enforceable **at the time it is made**."[2]

The Contract is not "an otherwise enforceable agreement" because Ascential provided only illusory promises as consideration for the obligations imposed on Mr. Dodson under the Contract. Ascential did not promise to employ Mr. Dodson for any period of time – indeed Ascential terminated Mr. Dodson shortly after he executed the Contract. Furthermore, the Contract explicitly states that it "shall not be construed as creating or evidencing any separate or independent obligation of [Ascential] or any other person or entity to hire or retain" Mr. Dodson and that it "does not change the at-will nature of [Mr. Dodson's] employment." Dodson Decl., Ex. B, § 7. Under binding Texas precedent, a promise of at-will employment is illusory. See Johnson, 124 S.W.3d at 684; Cobb, 109 S.W.3d at 885-86. Although the Contract claims that Mr. Dodson would be given a grant of stock options as consideration, Mr. Dodson never received such options. See Dodson Decl., ¶ 8. Finally, the Contract does not obligate Ascential to provide Mr. Dodson with any proprietary or confidential information at the time it was made or otherwise. Therefore, even if Ascential did later disclose information to Mr. Dodson, such information could not create an "otherwise enforceable agreement"

---

statutory requirements. See, e.g., Alex Sheshunoff Mgmt. Services, L.P. v. Johnson, 124 S.W.3d 678, 685 (Tex. App. 2003).

[2] Green, 66 S.W.3d at 438 (citations omitted) (emphasis in original); see Strickland v. Medtronic, Inc., 97 S.W.3d 835, 839 (Tex. App. 2003) ("[A]ssuming . . . Medtronic impliedly promised to provide confidential information to Strickland, we conclude such a promise is illusory because it necessarily depends on a period of employment"); Cobb, 109 S.W.3d at 887 ("The agreements did not obligate [the employer] to disclose any confidential information outside of the employment relationships. Thus, the trial court could have reasonably concluded the agreements were dependent on continued employment, and thus are illusory"); Johnson, 124 S.W.3d at 687 ("ASM's promise to give Johnson access to training and confidential information in the future was illusory because ASM could have fired Johnson immediately after he signed the agreement and escaped its obligation to perform").

11

under the laws of Texas. See, e.g., Green, 66 S.W.3d at 438; see also Strickland, 97 S.W.3d at 839; Cobb, 109 S.W.3d at 887.. Because Ascential provided only illusory promises as consideration for the obligations imposed on Mr. Dodson, the Contract is not an "otherwise enforceable agreement." Consequently, Ascential cannot enforce the non-competition/non-solicitation covenants contained in the Contract against Mr. Dodson.

### C. The Non-Competition/Non-Solicitation Covenant is Also Unenforceable Under Massachusetts Law

Even if Massachusetts law were to apply to the Contract, the non-competition/non-solicitation covenants contained therein are not enforceable. Under Massachusetts law, "[a] restrictive covenant between an employer and an employee may be enforced where the employer can show that the agreement is: (1) necessary to protect a legitimate business interest of the employer; (2) supported by consideration; (3) reasonably limited in all circumstances including time and space; and (4) otherwise consonant with public policy." Cypress Group, Inc. v. Stride & Assocs., Inc., No. 036070BLS2, 2004 WL 616302, *2 (Mass. Super. Ct. Feb. 11, 2004) (citing All Stainless, Inc., 308 N.E.2d at 485-86). The Contract does not satisfy these requirements.

First, the Contract is not necessary to protect a legitimate business interest of Ascential. As discussed above, the legitimate business interests that can be protected with a restrictive covenant in Massachusetts include trade secrets, other confidential information, or the good will the employer has acquired through dealings with its customers. See All Stainless, Inc., 308 N.E.2d at 485-87; Marine Contractors Co. v. Hurley, 310 N.E.2d 915, 920 (Mass. 1974). Ascential has offered no evidence that trade secret or confidential information has been compromised by Mr. Dodson nor has it offered any evidence concerning damage to its good will. On the contrary, the record demonstrates that Mr. Dodson is not in a position to damage Ascential's good will and that he has not compromised Ascential's information. For example, Ascential alleges that Mr. Dodson has solicited business from two of its customers using confidential information, but the two customers identified by Ascential are

12

LIBB/1274364.1

entities Mr. Dodson had no knowledge of or dealings with prior to his joining Informatica. See Dodson Decl., ¶ 4. Moreover, one of the entities, Temple-Inland, was already an Informatica customer and the other, World Savings Bank, had been in contact with Informatica about purchasing its products before Mr. Dodson joined the company; Ascential's claims that Mr. Dodson is soliciting business from "its" customers is not supported by the record. See id. Protection of the employer from ordinary competition is not a legitimate business interest, and a covenant not to compete designed solely for that purpose will not be enforced. See, e.g., Richmond Bros, Inc. v. Westinghouse Bdcst. Co., Inc., 256 N.E.2d 304, 307 (Mass. 1970); Marine Contractors Co., 310 N.E.2d at 920. Accordingly, Ascential has not demonstrated a legitimate business interest outside of its desire to avoid ordinary competition.

Second, a non-competition agreement, to be enforceable, must be reasonable in geographical scope and length of time. See, e.g., Blackwell v. E.M. Helides, Jr., Inc., 331 N.E.2d 54, 56 (Mass. 1975); All Stainless, Inc., 308 N.E.2d at 485-87. Here, if the restrictive covenants in the Contract are enforced, Mr. Dodson will not be able to work anywhere in the country in the only field in which he is trained and has experience until September, 2005.

Finally, as discussed in Part III.B., *infra*, the public interest weighs against enforcement of the Contract against Mr. Dodson. Given the overly-broad scope of the restrictive covenants and Ascential's abject failure to offer evidence of any legitimate business interest the Contract protects, the Contract is unenforceable under the laws of Massachusetts.

**D.** **Ascential Cannot Enforce the Non-Disclosure Covenant Because It Has Provided No Evidence Of Actual Or Threatened Disclosure**

In addition to the non-competition/non-solicitation covenants, the Contract also permanently prohibits Mr. Dodson from disclosing or using any "proprietary or confidential information or know-how" of Ascential's. Dodson Decl., Ex. B, § 1. Mr. Dodson, however, has not disclosed or otherwise used Ascential's proprietary or confidential information in connection with his Informatica

13

employment. See id. at ¶ 9. Indeed, Ascential has presented no evidence that Mr. Dodson has violated or will violate this provision of the Contract. Instead, Ascential merely alleges on "information and belief" that Mr. Dodson has used or will use its confidential information. See Verified Amended Complaint, ¶¶ 3, 30, 33, 34, 35, 36. As a matter of law, an employee may, upon terminating employment, take with him and use the general skill or knowledge gained during the course of the employment. See Jet Spray Cooler, Inc. v. Crampton, 282 N.E.2d 921, 924 (Mass. 1972). An employer cannot, by contract, prevent an employee from using the skill and intelligence acquired, increased, or improved through experience and instruction received in the course of employment. See Richmond Brothers, Inc., 256 N.E.2d at 307. Rather, an employer bears the significant burden of identifying and isolating confidential information entitled to protection, while at the same time establishing that the employee is left free to use the knowledge and skill he brought to the job, as well as that learned during the employment. See Dynamics Research Corp. v. Analytic Sciences Corp., 400 N.E.2d 1274, 1282-83 (Mass. App. Ct. 1980).

Because Ascential has presented no evidence of an actual or threatened disclosure of confidential information or trade secrets, it is not entitled to enforce the non-disclosure agreement through injunction.[3] Under the laws of Texas and Massachusetts, a party is not entitled to an injunction enforcing a non-disclosure provision in the absence of any concrete evidence of actual or threatened disclosure of confidential information. See, e.g., Green, 66 S.W.3d at 441-43 (upholding denial of injunction and holding plaintiff "did not show a probable right to recover on the claims of breach of confidentiality" because "the information [defendant] received . . . was either not proprietary or, if he did receive confidential information, he had not used it adversely to [plaintiff]");

---

[3] Mr. Dodson does not concede Ascential's allegations that he had access to a broad range of confidential information. See Verified Amended Complaint, ¶ 4. In fact, there are serious questions about whether any the information Ascential's contends is confidential is actually so. For example, Ascential contends that its customer lists are "confidential and sensitive," id., yet Ascential lists its customers publicly on its website, see http://www.ascential.com/customers/customers.html.

14

Campbell Soup Co. v. Giles, 47 F.3d 467, 472 (1st Cir. 1995) (affirming denial of injunction and holding that "[t]he record contains no indication that Giles is dishonest or would be inclined to breach his confidentiality agreement") (upholding application of Massachusetts trade-secret law). Furthermore, as discussed in Part III.A., *infra*, Ascential's failure to present any evidence that Mr. Dodson has used or will use its confidential information prevents issuance of injunctive relief because Ascential has failed to demonstrate irreparable harm.

## III.   ASCENTIAL HAS FAILED TO MEET THE REMAINING REQUIREMENTS FOR OBTAINING INJUNCTIVE RELIEF

Ascential is not entitled to the extreme remedy of a TRO or a preliminary injunction because it has failed to demonstrate a likelihood of success on the merits of its claims. Moreover, Ascential has also failed to meet the remaining requirements for obtaining such relief.

### A.   Ascential Has Not Demonstrated Irreparable Harm

Ascential has asserted, rather than demonstrated, irreparable harm and is therefore not entitled to injunctive relief. Only "a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined." Mass. Coalition of Citizens With Disabilities, 649 F.2d at 74; see Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) ("A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."); Fed. R. Civ. P. 65(b) (authorizing TRO only if movant shows "specific facts" that "immediate and irreparable injury, loss or damage will result" in the absence of relief); cf. Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc., 446 F.2d 353, 357 (5th Cir. 1971) ("[T]he district courts have shown appropriate reluctance to issue [preliminary injunction] orders where the moving party substantiates his side of a factual dispute on information and belief.").

In this case, Ascential's allegations concerning Mr. Dodson's disclosure of confidential information and its claims that Mr. Dodson could damage Ascential's goodwill are limited to

15

speculation based upon "information and belief." See Verified Amended Complaint, ¶¶ 3, 28, 30, 31, 33, 34, 35, 36. There is no "specific" evidence demonstrating a "presently existing, actual threat." In fact, Ascential's own arguments conclusively prove that its motion is based on the "mere possibility of injury." See, e.g., Memorandum In Support of Ascential's Amended Motion at 13 ("[Mr. Dodson] has the potential to destroy Ascential's goodwill if he is not restrained from working for Informatica and Ascential's other competitors."). Because Ascential has not presented evidence of irreparable harm, it is not entitled to a TRO or a preliminary injunction.

Even had Ascential presented some evidence of actual injury, its application for a TRO and a preliminary injunction must be rejected because Ascential unreasonably delayed bringing its motion. Cf., e.g., Charlesbank, 370 F.3d at 163 (1st Cir. 2004) ("[D]elay between the institution of an action and the filing of a motion for preliminary injunction, not attributable to intervening events, detracts from the movant's claim of irreparable harm . . . The longer the delay, the more pervasive the doubt."); Amicus Communications, L.P. v. Hewlett-Packard Co., Inc., 1999 WL 495921, at *19 (W.D. Tex. June 11, 1999) ("The Court finds that ACLP's delay in seeking injunctive relief in Court, standing by itself and in conjunction with the Court's findings on likelihood of success, rebuts any presumption of irreparable harm"). Ascential terminated Mr. Dodson's employment in September, 2003, and Mr. Dodson accepted employment at Informatica in January 2004. See Dodson Decl., ¶¶ 3, 9. Yet Ascential did not serve Mr. Dodson with its complaint until June 28, 2004. Ascential gives no excuse for its delay in filing for injunctive relief; surely, had Mr. Dodson posed a real threat Ascential would have moved more quickly. Furthermore, Mr. Dodson was employed at Informix and Ascential from 1994 to 2003 and during all of that time was never once asked to sign an employment contract with a non-competition/non-solicitation of customers covenant. See Dodson Decl., ¶¶ 5-6. Ascential's newly found concerns about Mr. Dodson's threat to its goodwill are belied by its attitude towards that goodwill in the past. Accordingly, because Ascential has presented no evidence of

16

irreparable harm and because its unexplained delay in filing for injunctive relief rebuts any assertion of irreparable harm, Ascential is not entitled to injunctive relief.

### B. The Balance of Hardships And The Public Interest Favor Mr. Dodson

Ascential has also failed to establish that the balance of hardships and the public interest weigh in favor of its requested injunctive relief. First, Ascential has already delayed for almost six months in seeking an injunction and has presented no evidence that Mr. Dodson has caused or will cause any harm to Ascential. As discussed above, Ascential's claims that it will be harmed absent relief simply lack merit or support. Should this Court grant Ascential's request, however, Mr. Dodson will be immediately forced to give up his employment and will be barred from seeking employment in his field of experience and training. Not only would Mr. Dodson suffer immediate financial loss, including the loss of salary and commissions, but he may also suffer damage to his reputation that would impact his ability to obtain employment in the future. Such damage would be particularly egregious considering that Ascential has not produced any evidence substantiating its claims that Mr. Dodson is harming or will harm Ascential.

Furthermore, the public interest decidedly weighs against granting Ascential's request for injunctive relief. Ascential required Mr. Dodson to sign the Contract, which contains sweeping restrictive covenants, after nearly ten years of employment. Courts routinely hold that such contracts are disfavored and strictly construed against an employer precisely because of the extreme imbalance in bargaining power that was present in this case. See, e.g., Sentry, 442 N.E.2d at 47. To make matters worse, Ascential did not even fulfill the promise it made -- on the face of the Contract -- to grant Mr. Dodson stock options, a fact Ascential conveniently fails to mention in its application for injunctive relief. See Dodson Decl., ¶ 8. Furthermore, in contravention of clear Texas policy, Ascential is seeking to reach out from Massachusetts to prevent a Texas resident who has always worked for Ascential in Texas from earning a living in his chosen field of training. Finally, the

17

Contract is no longer even operative [redacted] another fact Ascential conveniently forgot to mention in its application for injunctive relief.

Ascential argues based on generalities that the public has an interest in enforcing agreements that "are voluntarily entered into, agreed upon, and relied upon by employers in entrusting employees with competitively sensitive . . . information." See Memorandum In Support of Ascential's Amended Motion at 15. The specifics of this case, however, show that Mr. Dodson did not enter into the Contract without pressure, that Ascential did not even fulfill its end of the bargain under the Contract, that there is absolutely no evidence Mr. Dodson has harmed or will harm Ascential, that the Contract is no longer operative, and that Ascential, a savvy multinational corporation, is attempting to circumvent the laws of the state in which it employed Mr. Dodson. The public has no interest in furthering such sharp corporate practices. Thus, Ascential's request should be denied.

### Conclusion

For the foregoing reasons, Mr. Dodson respectfully requests that this Court deny Ascential Software Corporation's Amended Motion For Preliminary Injunction in its entirety.

Respectfully submitted,

RUSSELL DODSON

By his attorneys,

_____
James S. Dittmar, P.C. (BBO #126320)
Robert M. Hale (BBO #217710)
Christopher B. Kaczmarek (BBO #647085)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
Tel: (617) 570-1000

18

LIBB/1274364.1

Of Counsel:

QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
   Robert W. Stone (CA Bar No. 163513) (Motion to Appear *Pro Hac Vice* Pending)
   Ann M. Heimberger (CA Bar No. 197060) (Admitted *Pro Hac Vice*)
   Matthew W. Meskell (CA Bar No. 208263)
50 California Street, 22nd Floor
San Francisco, CA 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

DATED: July 14, 2004

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 14, 2004, a true and correct copy of *Defendant Russell Dodson's Opposition to Ascential Software Corporation's Amended Motion for Preliminary Injunction* was served by hand upon Daniel E. Rosenfeld, Esq. and Amy B. Abbott, Esq., Kirkpatrick & Lockhart, LLP, 75 State Street, Boston, MA 02109

                                                            Christopher B. Kaczmarek

19