UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ASCENTIAL SOFTWARE CORPORATION, | ) | |
| Plaintiff | ) | |
| v. | ) | Civil Action No. 04-40130 |
| RUSSELL DODSON, | ) | |
| Defendant | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff Ascential Software Corporation ("Ascential"), by and through its attorneys, Kirkpatrick & Lockhart LLP, submits the following Second Amended Complaint against Defendant Russell Dodson ("Dodson").

## NATURE OF THE CASE

1.      Ascential brings this case to protect itself from (i) Dodson's flagrant and continuing violation of his express written agreement not to disclose or use any proprietary or confidential information belonging to Ascential that was disclosed to Dodson, or to which Dodson had access, and (ii) Dodson's flagrant and continuing violation of his express written agreement not to make or cause to be made, directly or indirectly, any comments to any third party that disparage or denigrate Ascential or any of its officers or directors.

2.      On September 30, 2003, Dodson, a District Manager in Ascential's North American Sales unit, was terminated from his employment with Ascential.  Upon

information and belief, following his termination and during the period that Dodson was receiving severance from Ascential, Dodson negotiated the commencement of new employment with Informatica Corporation ("Informatica"), a direct and major competitor of Ascential that offers products and services substantially similar to Ascential's products and services.

3.    Upon information and belief, Dodson commenced employment with Informatica no later than January 2004.  Since that time, Dodson has solicited business from Ascential customers and from potential Ascential customers by engaging in direct competition with Ascential.  Moreover, upon information and belief, Dodson has also revealed and utilized confidential and proprietary information of Ascential and has made disparaging and denigrating comments concerning Ascential's products, services and/or methodologies.

4.    Dodson, while employed by Ascential, had access to, was privy to, and was provided copies of significant confidential and sensitive information belonging to Ascential.  Among other things, Dodson had access to (i) Ascential's customer lists for all of North America, (ii) Ascential's customer contact information for all of North America, (iii) Ascential's list of all closed deals since the launch of its current information systems, (iv) Ascential's forecast information, including the name of each sales prospect and what stage Ascential was at in its sales program with respect to each such prospect, (v) Ascential's sales methodology, including copies of all power point sales presentations, and (vi) the manner in which Ascential was handling each of its sales geographies within North America.

5.      After commencing employment with Informatica, Dodson has competed directly with Ascential.  Ascential has learned that on at least two occasions, Dodson has utilized sensitive and confidential information belonging to Ascential to directly solicit potential customers of Ascential that had been the subject of substantial preparation with a view to making a bid, proposal, or offer in the six months prior to Dodson's termination of his employment with Ascential.

6.      Upon information and belief, Dodson has disparaged and denigrated, and continues to disparage and denigrate, Ascential's software, methodology and stability by representing to Ascential's customers and potential customers that Informatica's products are better suited to meet the customer's specific requirements than Ascential's products.  Moreover, by engaging in the sale process of Informatica's products, which directly compete with Ascential's products, it is inevitable that in any comparison of Ascential's and Informatica's products Dodson will disparage and denigrate Ascential's ability to provide on demand data integration.

7.      Dodson has engaged in the foregoing conduct in clear and direct violation of (i) the confidentiality provisions of his agreement with Ascential, and (ii) the non-disparagement and non-denigration provision of his agreement with Ascential.

8.      Accordingly, by this action, Ascential seeks, <u>inter alia</u>, a permanent injunction forbidding Dodson from, among other things, disclosing proprietary and confidential information belonging to Ascential and disparaging or denigrating Ascential in any manner or form.  Unless this Court grants such relief, the potential damages to Ascential will be irreparable, substantial and incalculable.  Ascential also seeks

damages from Dodson arising from his tortious and unlawful conduct as described below.

## PARTIES

9.      Ascential is a corporation organized and existing under the laws of the state of Delaware with a principal place of business located at 50 Washington Street, Westboro, Massachusetts.

10.      Dodson is an individual residing, upon information and belief, at 120 Weston Lane, Southlake, Texas 76092.

## JURISDICTION AND VENUE

11.      This Court has personal jurisdiction over Defendant Dodson pursuant to Massachusetts General Laws Chapter 223A, Section 3 because he has transacted business in this Commonwealth.

## BACKGROUND

### The Business of Ascential Software Corporation

12.      At all relevant times, Ascential has been engaged in the enterprise data integration business providing products and services to its customers in the United States and worldwide.  Ascential provides its customers with comprehensive end-to-end solutions that help businesses transform data into accurate, reliable and complete business information.  Ascential's software suite, the Ascential Enterprise Integration Suite$^{TM}$, provides an infrastructure for managing the massive volume, variety and velocity of data at the enterprise level and enhancing data quality.

13.    Ascential assists its customers maximize the contributions of their existing IT software of all types, including systems for business process orchestration, customer relationship management, enterprise resource planning, supply chain management, business intelligence and analytics, electronic data interchange, e-business and data warehouses, and other software.

14.    Ascential's approach helps its customers harness the power of all of their corporate data to gain a 360 degree view of their customers, suppliers, partners and operations.  Ascential utilizes a methodology, Iterations®, to rapidly design, develop and deploy data integration infrastructure for its customers.  That methodology ensures that Ascential's customers have a consistent, repeatable approach to data integration, guaranteeing delivery of more successful projects while reducing project costs and risks.

15.    Ascential's methodology is confidential, proprietary and of critical importance to the company and its competitive position in the enterprise data integration industry.

16.    Ascential's competitive advantage is rooted in the software sequence and procedural method employed to extract and transform data into the destination target. The means of integrating the relevant data is highly differentiated between competing companies and is critical in the sale process.

17.    Ascential establishes strategic partnerships with its customers and maintains a company culture that aligns the priorities and initiatives of the company with the needs and requirements of its customers.

<u>Dodson's Role in Ascential's Sales Organization</u>

18.     In the course of operating its business, Ascential has expended significant resources in developing confidential and proprietary sales programs and developing confidential customer information.  This information enables Ascential to sell its software and gives it a competitive position over other companies in the data integration field.

19.     Ascential's sales management team is organized internationally and nationally.

20.     During Dodson's employment with Ascential, he was a member of the North American Sales team.  More specifically, when Dodson began his employment at Ascential on or about February 28, 1994, he was a SE2 (Sales Engineer 2).  Later, on or about May 1, 1995, Dodson was promoted to a SE3 (Sales Engineer 3).  Finally, on or about February 19, 1996, Dodson was promoted to the position of SE (Systems Engineer) District Manager for two districts, the South Central District consisting of Texas, Oklahoma, Arkansas, Mississippi and Louisiana, and the South East District consisting of Alabama, Georgia, South Carolina, North Carolina and Florida.

21.     As a SE District Manager, Dodson attended all training classes for Ascential's sales managers, as well as quarterly meetings, corporate meetings and annual technical sessions.

22.     As a SE District Manager, Dodson had full access to confidential and proprietary information pertaining to virtually all aspects of Ascential's business model and competitive strategy, including marketing, engineering, advanced product development, advanced consulting and real time integration.

23.    As a SE District Manager, Dodson was provided with and had copies of confidential information of Ascential, including customer lists, prospect lists, contact lists, forecast information, including prospect information such as where the prospect was in Ascential's proprietary sales methodology, sales information concerning deals that had been contracted, product manuals, training materials and sales methodology.

24.    In addition, during Dodson's employment with Ascential, Dodson had unlimited access to design documents for future product direction, documents detailing existing issues with Ascential's products as identified by the support services division, perceived market weaknesses, white papers and trade secrets.  This proprietary and confidential information provided Dodson with competitive knowledge of Ascential's products and capabilities as presently used and as planned for future development.  Thus, Dodson has intimate and detailed knowledge of Ascential's current and planned data integration solutions.

25.    As a SE District Manager, Dodson managed the sales process from a technical standpoint.  A critical component of Dodson's position was the understanding of Ascential's products and market capabilities based on confidential and proprietary information of Ascential.  A vital aspect of Dodson's role was to position Ascential's product against the competitor's product, to demonstrate to the existing or potential customer that Ascential's procedural method best met the customer's requirements.

26.    To meet the customer's requirements, Dodson adapted the data integration software to achieve a procedural method of accessing, extracting, manipulating, transforming and inserting the data into the target destination.  Through

this sales process, Dodson built relationships with Ascential's customers with the goal of meeting the customer's needs and ensuring future references from each customer.

27.    Dodson routinely prepared product presentations, counter-presentations and proof of concept documents.  In preparing such presentations and documents, Dodson had access to internal competitive intelligence such as detailed product comparisons and sales tactic comparisons.

28.    With respect to the South Central District consisting of Texas, Oklahoma, Arkansas, Mississippi and Louisiana, and the South East District consisting of Alabama, Georgia, South Carolina, North Carolina and Florida, Dodson was provided with copies of Ascential's forecast information, including all of Ascential's sales opportunities and where each potential customer was in Ascential's sales methodology.

29.    Dodson underwent Ascential's confidential training on how to present Ascential's solutions.  Dodson attended and received materials in connection with updated new hire sales training in October 2001.  Dodson attended advanced training and received materials in connection with SE (Sales Engineer) training on how to present Ascential's solutions in 2002 and as recently as July 2003.

30.    Dodson was privy to Ascential's entire confidential sales strategy for North America.

<u>Dodson's Non-Disclosure, Non-Disparagement and<br>Non-Denigration Agreement</u>

31.    On or about September 30, 2003, Dodson signed an agreement confirming the terms and conditions of Dodson's separation from employment with Ascential whereby he agreed, in consideration of additional payments and benefits to (i)

not disclose confidential or proprietary information, (ii) comply with his non-solicitation

obligations, (iii) return to Ascential all confidential and proprietary documents, (iv) not to

make any comments that disparage or denigrate Ascential or any of its officers or

directors, and (v) not to solicit for employment any employee, contractor or affiliate of

Ascential for a period of two years.

32.    Specifically, the agreement provides, as follows:

> 3.  You agree to keep confidential all confidential and proprietary information of the Company that was disclosed to you, or to which you had access, in the course of your employment with the Company.  You further agree to comply with all of the terms and conditions of the Employee Inventions and Confidentiality Agreement previously entered into by the Company and you, including, without limitation, your non-solicitation obligations thereunder.  You represent and warrant that you have returned to the Company all confidential and proprietary documents and other materials of the Company in your possession, as well as any other items in your possession that are the property of the Company.
>
> 4.  You agree not to make or cause to be made, directly or indirectly, any comments to any third party that disparage or denigrate the Company or any of its officers or directors.
>
> *   *   *
>
> 8.  You agree not to solicit for employment nor participate in the solicitation for employment of any employee, contractor or affiliate of the Company for a period of two years from and after the last day of your employment by the Company.  You agree that the names and other identifying information relating to the Company's employees, contractors and affiliates constitute proprietary and confidential information that is the property of the Company.
>
> *   *   *
>
> 11.  This Agreement will be binding upon your heirs and personal representatives, and upon the successors and assigns of the Company.  This Agreement will be governed by and construed in accordance with the laws of The Commonwealth of Massachusetts, without reference to any conflict-of-law principle

that would result in the application of the laws of any other jurisdiction.

<u>Dodson's Unlawful Post Termination Conduct</u>

33.      Upon information and belief, for a few days after being terminated, Dodson had unlimited access to Ascential's confidential and proprietary information which was contained on his laptop computer that had been issued to Dodson by Ascential.

34.      Upon information and belief, on the last day of Dodson's employment with Ascential, on two separate occasions, Dodson asked a colleague how to copy files that were contained on his laptop computer.  Specifically, Dodson inquired about copying e-mail strings and contact information that were stored on the laptop computer issued by Ascential.

35.      Informatica, Dodson's current employer, is one of Ascential's major direct competitors in the enterprise data integration business.

36.      Informatica and Ascential are head to head competitors in the extract transformation and load field.

37.      Informatica's web-site claims that Informatica provides "a unified architecture and products for accessing, integrating, visualizing, and auditing data. Designed to solve customers' complex data integration problems today and in the future, Informatica's Universal Data Services architecture is built upon a single Data Server that provides foundation services for data interaction such as enterprise-level performance, scalability, availability, metadata management, optimization, security, scheduling and workflow. Unified into one easily-managed server, these core functions

and services will never need to be rebuilt, can be cost-effectively maintained, and can be leveraged on demand by an indefinite number of shared data services."

38.    Since leaving Ascential, Dodson, as an employee of Informatica, has engaged in direct competition with Ascential on, at least, two separate occasions, in connection with, at least, two separate customers of Ascential.

39.    Upon information and belief, Dodson has solicited business in direct competition with Ascential from Temple-Inland, a natural resources company and bank based in Austin, Texas.

40.    Dodson had access to confidential information concerning Temple-Inland while he was employed at Ascential.

41.    Upon information and belief, Dodson and other Informatica employees working with or directed by Dodson disclosed confidential information of Ascential to Informatica and used confidential information of Ascential in order to provide Informatica and Dodson with an improper competitive advantage in its efforts to make sales to Temple-Inland.

42.    Upon information and belief, Dodson has solicited business and is currently soliciting business in direct competition with Ascential from World Savings, a bank based in San Antonio, Texas and Oakland, California.

43.    Dodson had access to confidential information concerning World Savings while he was employed at Ascential.

44.    Upon information and belief, Dodson disclosed confidential information of Ascential and used confidential information of Ascential in order to provide Informatica

11

and Dodson with an improper competitive advantage in their efforts to make sales to World Savings.

45.    Upon information and belief, Dodson's improper use of confidential information is ongoing in connection with efforts by Dodson and Informatica to sell products and services to World Savings.

46.    Upon information and belief, Dodson will continue to attempt to gain an improper competitive advantage over Ascential through the use of confidential and proprietary information of Ascential and by disparaging and denigrating Ascential.

47.    Upon information and belief, Dodson's use of confidential and proprietary information is ongoing in that Informatica assigns Dodson to customers and/or potential customers for which Ascential is competing for business.

48.    Upon information and belief, Dodson's disparagement and denigration of Ascential is ongoing in that Informatica assigns Dodson to customers and/or competing customers in order to gain an improper competitive advantage over Ascential.

COUNT I
BREACH OF CONTRACT

49.    Ascential incorporates by reference the allegations set forth in each of the foregoing paragraphs hereof.

50.    By his conduct as alleged herein, Dodson has breached the terms of his agreements with Ascential.

51.    Ascential has sustained actual damage as a result of Dodson's unlawful conduct.

## COUNT II
## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

52.    Ascential incorporates by reference the allegations set forth in each of the foregoing paragraphs hereof.

53.    Dodson owed Ascential an obligation of good faith and fair dealing arising from his employment relationship and under his agreements with Ascential.

54.    Dodson's conduct as set forth herein constitutes a breach of his obligation of good faith and fair dealing.

55.    Ascential has sustained actual damage as a result of Dodson's unlawful conduct.

## COUNT III
## INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS

56.    Ascential incorporates by reference the allegations set forth in each of the foregoing paragraphs hereof.

57.    By engaging in the aforementioned conduct Dodson has interfered with the actual and potential business relationships of Ascential.

58.    Dodson had knowledge of these potential business relationships, including Ascential's contemplated contracts with Temple-Inland and World Savings.

59.    Upon information and belief, Dodson interfered with the potential business relationships referenced above through improper motive or means.

60.    Due to Dodson's conduct, customers and/or potential customers refrained from doing business with Ascential and consequently, Ascential did not realize an economic benefit, and instead suffered a loss of an advantage.

PRAYERS FOR RELIEF

WHEREFORE, Ascential hereby requests that this Court grant it the following relief:

a.  Grant Ascential a permanent injunction (1) enjoining Dodson from directly or indirectly disclosing or using confidential and proprietary information of Ascential to any person or entity, and (2) enjoining Dodson from directly or indirectly making any comments to any third party that disparage or denigrate Ascential or any of its officers or directors;

b.  Issue a mandatory injunction requiring Dodson to return to Ascential all confidential or proprietary information in any way relating to the operation of Ascential's business;

c.  Enter judgment on behalf of Ascential and order Dodson to pay damages in an amount to be determined by a jury at trial, together with interest and costs;

d.  Grant other such relief as the court deems just and proper.

**JURY DEMAND**

The Plaintiff demands a trial by jury as to all issues.

Respectfully submitted,
ASCENTIAL SOFTWARE CORPORATION,

By its attorneys,


/s/ Amy B. Abbott
Daniel E. Rosenfeld (BBO #560226)
Amy B. Abbott (BBO #648072)
KIRKPATRICK & LOCKHART LLP
75 State Street
Boston, MA  02109-1808
(617) 261-3100

Dated:  July 30, 2004